

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 23, 2020

**Via ECF**
The Honorable Judge Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **Sanchez Gomez, et al. v. Lucky 99 Cent Shop Inc., et al.**
    **20-CV-425 (LJL)**

Dear Judge Liman:

Our office represents Italubi Sanchez Gomez ("Gomez") and Rodolfo Almazo-Hernandez ("Hernandez") (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Lucky 99 Cent Shop Inc. and Xian Ce Zhou (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached after a four hour mediation session with a Court-appointed mediator on November 16, 2020.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

a. **Plaintiffs' Position**

Plaintiffs brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Specifically, Plaintiffs alleged that, as former employees of the Defendants, that they were not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

Gomez alleged that she was employed by Defendants as a cashier and stocker at Defendants' store from in or around March 2012 until in or around April 2017. However, as the Complaint was filed in January 2020, the relevant statutory period under the NYLL commenced in January 2014. During the relevant statutory period, Gomez alleged that she worked approximately fifty-five (55) hours per week but was paid a flat weekly salary that did not account for her hours worked in excess of forty (40) each work week. As such, Plaintiff alleged that she was owed approximately 15 hours of unpaid overtime for each week worked during the statutory period.

Hernandez alleged that he was employed by Defendants as a stocker at Defendants' store from in or around April 2008 until in or around April 2018. However, as the Complaint was filed in January 2020, the relevant statutory period under the NYLL commenced in January 2014. During the relevant statutory period, Hernandez alleged that he worked approximately fifty-five (55) to sixty-nine (69) hours per week but was paid a flat weekly salary that did not account for his hours worked in excess of forty (40) each work week. As such, Plaintiff alleged that he was owed approximately 15 to 29 hours of unpaid overtime for each week worked during the statutory period.

Lastly, both Plaintiffs alleged that they were paid entirely in cash during their employment and were entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Although Plaintiffs were confident that they could succeed on all of their claims at trial, Plaintiffs recognized the risks of continuing litigation and the defenses maintained by Defendants and preferred a guaranteed payment through a carefully-negotiated settlement agreement. In agreeing to settle this matter for $70,000.00, Plaintiffs considered Defendants' arguments and disagreements as to the dates of each Plaintiff's employments and the number of hours each Plaintiff worked per week. Plaintiffs also conducted a thorough investigation as to the assets owned by Defendants and were concerned about the ability to collect on a larger judgment should this matter have proceeded to trial. Lastly, Plaintiffs preferred a lump sum payment upon Court approval of the Settlement Agreement as opposed to the uncertainty of a trial at a much later date.

b. **Defendants' Position**

Defendants deny the allegations in Plaintiffs' Complaint and raise various defenses. First, Defendants maintain that Plaintiffs worked fewer hours than alleged in the complaint because each plaintiff worked invariably 10-hour shifts, 9:30am through 8:00 pm with a 30-minute lunch break, during each workday during their respective employment at Lucky 99, a 99-cent store. Plaintiffs worked 5 days per week except for the period from January 2017 to June 2017 when Plaintiff Hernandez worked 6-day weeks. As such, Plaintiffs worked 50 hours per week throughout most of their employment. Accordingly, Plaintiffs' respective wages are intended to compensate for the actual hours worked rather than the presumptive 40. *See Ouiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 U.S. Dist. LEXIS 64662, 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016). Therefore, Defendants calculate back wages in the amount of $16,404.24 for both Plaintiffs.

Moreover, Defendants contend that neither plaintiff is entitled to statutory damages for failure to provide wage notices. The Wage Theft Prevention Act, which required employers to give each employee notice at time of hire, went into effect on April 9, 2011. *See Inclan v. N.Y.*

*Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015). The WTPA does not apply retroactively. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143-44 (2d Cir. 2013). Here, Plaintiff Gomez started in March 2012, Complaint ¶21, and Plaintiff Rodolfo in April 2008. Therefore, the WTPA does not apply to Rodolfo as he was hired prior to the effective date of the WTPA while For Gomez, the six-year statute of limitations on his wage notice claim has run. *See* N.Y. Lab. Law § 198(3).

As a result, Defendants contend that the full value of Plaintiffs claims, including back wages, liquidated damages and statutory damages for wage statements violations, amount to $42,808.48, excluding attorney's fees and costs.

Therefore, the settlement sum of $70,000 reflects a reasonable compromise between the parties' dispute over Defendants' alleged wage and hour violations, and this amount considers the costs and risks of protracted litigation. *Cf., e.g., Beckert v. Ronirubinov*, 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding that a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation);*Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (holding that the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation").

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted).

The parties have agreed to settle all claims asserted in this matter for $70,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement were achieved with the assistance of an experienced wage-and-hour neutral appointed by the Court. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiffs and the circumstances of Plaintiff's termination, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

**The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable**

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria*, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in paragraph 2 of the Settlement Agreement ("Release") is narrowly-tailored to claims "which were alleged in the Complaint filed in this action, specifically including [FLSA] and [NYLL] and its associated regulations concerning unpaid wages, record-keeping violations and failure to provide wage statements, which Plaintiffs ever had or now have against the Defendants." The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including unknown claims and claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

**Requested Attorneys' Fees and Distribution to Plaintiffs**

The parties agreed to a global settlement of $70,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $45,768.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which take into account the length of each Plaintiff's employment, the rate of pay received by each Plaintiff, the number of overtime hours alleged to have been worked by Plaintiffs. Each Plaintiff's share of the settlement proceeds also take into account each Plaintiff's potential risk of recovery at trial. The amounts to be received by each Plaintiff are included in Paragraph 1 of the Settlement Agreement.

Plaintiffs' counsel respectfully requests $1,349.00 for identifiable expenses, which includes:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on Defendants in this matter: $316.00
- postage fees: $8.00

Additionally, in our representation of the Plaintiffs, our office filed a prior lawsuit against the Defendants alleging the same wage claims in this Court bearing Case No. 18-CV-4143. That

case was dismissed as Defendants failed to appear and Plaintiffs did not seek a default judgment at that time. Plaintiffs' counsel incurred costs totaling $625.00, including the Southern District of New York filing fee ($400.00) and the costs of service of the Summons and Complaint in that matter ($225.00). In total, Plaintiffs' counsel has incurred expenses of $1,349.00 in their representation of Plaintiffs in their unpaid overtime wages claims against Defendants.

Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($68,651.00), or $22,883.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $24,232.00.

**Settlement Amount:** $70,000.00
**Attorneys' Expenses:** $1,349.00
**Settlement less Expenses:** $68,651.00
**Requested Attorneys' Fees:** $22,883.00 ($68,651.00 / 3)
**Total payable to Attorneys:** $24,232.00 ($22,883.00 + $1,349.00)
**Total payable to Plaintiffs:** $45,768.00 ($70,000.00 - $24,232.00)

Plaintiffs' attorneys and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

**Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of approximately one year of negotiations and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Agreement. We thank Your Honor for his consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.